UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW EVANS,

        Plaintiff,

        v.

CHAD MALLORY,

        Defendant.

_____/

CASE NO. 2:08-CV-12725
JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket #10)

I.    <u>RECOMMENDATION</u>: The Court should grant defendant's motion for summary judgment.

II.    <u>REPORT</u>:

A.    *Procedural Background*

    Plaintiff Matthew Evans is a state prisoner who, at the time relevant to this complaint, was incarcerated at the Macomb Correctional Facility in New Haven, Michigan. Plaintiff commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on June 25, 2008. He alleges that defendant Chad Mallery,[1] a Resident Unit Officer (RUO) at Macomb Correctional Facility, used excessive force against him in violation of the Eighth Amendment. Specifically, in his verified complaint plaintiff alleges:

    5.    On August 26, 2007 the plaintiff was engaged in a "Fist Fight" with a prisoner Ackley inside of the unit.

    6.    During the altercation Ruo. Rumohr came to break up the fight.

_____

    [1]In the caption and throughout his complaint, plaintiff spells defendant's surname as "Mallory" rather than "Mallery."

7.      Ruo. Martin Rumohr began restraining Ackley while I was hitting Ackley.

8.      At not time did anyone tell plaintiff to break it up or say anything to let plaintiff no [sic] to stip.

9.      Def. Mallory then ran at full force and football tackled me causing my head to hit the floor splitting it open (Ex. 2).

10.     Plaintiff blanked [sic] out when his head struck the floor.

11.     When staff helped plaintiff up plaintiff was in a daze and seeing in black and white.

12.     Plaintiff has had severe headaches since this incident up to the present day and short term memory lapse.

13.     Plaintiff heard Mallory say to his Co. worker [sic] while laughing "did you see the hit I put on him, look at his head".

14.     Plaintiff was then escorted to Henry Ford Emergency room where he received three (3) stapes in his head (view Ex. 3).

15.     Defendant Mallory maliciously and sadistically without need or provocation ran and football tackled me using excessive force causing plaintiff to split his head open on contact with the floor.

Compl., ¶¶ 5-15.  Plaintiff alleges that defendant's actions amounted to excessive force in violation of the Eighth Amendment.  *See id*., ¶ 16.  Plaintiff seeks $35,000 in compensatory damages and $20,000 in punitive damages.

An incident report prepared by Lieutenant Merrianne Weberg presents a somewhat different account of the incident:

At approximately 1050 hours C/O Rumohr observed prisoners Ackley #468473 and Evans #640360 fighting on D-Wing in housing unit #5.  C/O Rumohr reported the fight and immediately attempted to separate the two fighting prisoners.  C/O Rumohr restrained prisoner Ackley and prisoner Evans began striking the back of C/O Rumorh's head.  C/O Rumohr gave several direct orders to prisoner Evans to stop hitting him but the prisoner did not comply.  RUO Chad Mallory arrived on the scene and restrained prisoner Evans.  Prisoner Ackley was handcuffed and taken to segregation by C/O Dale Liske and C/O Brian Carpenay.  During the fight with prisoner Ackley, prisoner Evans sustained a laceration to his head.  Prisoner Evans

was taken to Henry Ford Hospital, treated–received three staples to his head–discharged and placed in segregation upon his return to the facility. C/O Rumohr was released from Henry Ford Hospital Emergency Room after being treated for contusions to his left elbow.

Compl., Ex. 3, Incident Report. Plaintiff was convicted of a major misconduct following a hearing on the matter. *See* Def.'s Br., Ex. A, Aff. of Chad Mallory, Attachment 2.

On September 12, 2008, defendant filed this motion for summary judgment. Defendant argues that there is no genuine issue of material fact with respect to whether his use of force was appropriate, and that he is entitled to qualified immunity. In support of his motion, defendant submits his own affidavit, in which he avers:

> 3.    I responded to a fight between Plaintiff Evans and Prisoner Ackley. Upon arriving at the scene I observed Plaintiff Evans assaulting Officer Rumohr who also responded to the fight. I then placed the Plaintiff on the floor and restrained him until he could be handcuffed and escorted out of the unit.

> 4.    At no time were my actions malicious or sadistic in nature. I responded in a profession manner as trained by the Department of Corrections.

Def.'s Br., Ex. A, Aff. of Chad Mallery. Defendant also submits in support of his motion plaintiff's medical records and a video of the incident, both of which were filed under seal. *See id.*, Exs. B & C. On December 29, 2008, plaintiff filed an affidavit and answer in opposition to defendant's motion for summary judgment. Plaintiff's affidavit in response essentially reiterates the allegations in his complaint.

B.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury

could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.     *Discussion*

        1.     *Eighth Amendment Excessive Force Generally*

        Plaintiff alleges that defendant used excessive force against him by tackling him, resulting in his head hitting the floor.  Unlike excessive force claims against police officers, which are analyzed for reasonableness under the Fourth Amendment, claims that prison guards used excessive force against an inmate are analyzed under the Eighth Amendment's prohibition on cruel and unusual punishment.  *See Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992).  In order to constitute cruel and unusual punishment prohibited by the Eighth Amendment, the plaintiff must establish both a subjective and objective component.  As to the subjective component, the actions of prison officials must constitute "'the unnecessary and wanton infliction of pain[.]'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).  Thus, in analyzing claims of excessive force by prison officials, the Court's inquiry focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  In *Hudson*, the Court recognized factors relevant to a determination of whether the force was wanton and unnecessary: (1) the extent of the injury suffered by the inmate; (2) the need for application of force; (3) the relationship between the need for force and the amount of force used; (4) the official's reasonable perception of the threat posed; and (5) any efforts made by the officials to temper the severity of their response.  *See Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).  With respect to the objective component, plaintiff must show that the defendants

5

actions were "objectively harmful enough" to offend "contemporary standards of decency." *Id*. at 6.

    2.    *Analysis*

After analyzing these five factors, the Court should conclude that no genuine issues of material fact exist as to the subjective component of plaintiff's Eighth Amendment claim, and that defendant is entitled to judgment as a matter of law.  In analyzing defendant's summary judgment motion, the Court must of course take the facts in the light most favorable to plaintiff.  "There is, however, an added wrinkle in this case: existence in the record of a videotape capturing the events in question." *Scott v. Harris*, 550 U.S. 372, 378 (2007).  In these circumstances, the Court must also "view[] the facts in the light depicted by the videotape." *Id*. at 381; *see also*, *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

Taken in the light most favorable to plaintiff and in light of the video of the incident, the facts in the record show the following.  During a prisoner movement, plaintiff and prisoner Ackley were engaged in a conversation in the hallway.  *See* Def.'s Br., Ex. C, Video, at 10:49:24-10:49:59 [hereinafter "Video"].[2]  Plaintiff swings at Ackley striking him, Ackley swings back, the two push against a wall and then fall to the floor.  *See* Video, at 10:50:00-10:50:08.  At this point, RUO Rumohr enters the scene.  *See* Video, at 10:50:08 Three second later, he reaches the men and a struggle ensues on the floor, which is blocked by other prisoners standing in the camera angle.  *See* Video, at 10:50:11-10:50:13.  It is undisputed, however, that Rumohr restrained Ackley at this point in time.

---

    [2]The citations herein reference the time-stamp on the video itself.

*See* Pl.'s Aff., ¶ 4.  At this point, defendant Mallery enters the scene and begins running toward the fray.  *See* Video, at 10:50:13.  Plaintiff stands up, bending over the top of Ackley and Rumohr.  *See* Video, at 10:50:14.  Plaintiff's elbow then pulls back and his shoulder raises, as if preparing to throw a punch, and then his arm goes downward.  *See* Video, at 10:50:15.  The video does not show if plaintiff landed his punch and, if so, on whom.  In his statements regarding the incident, Rumohr stated that plaintiff struck him three times.  Plaintiff denies striking or attempting to strike Rumohr, contending that he was only striking Ackley.  In any event, it is undisputed that plaintiff continued to strike someone while Rumohr was on top of Ackley, *see* Pl.'s Aff., ¶ 4 ("RUO Rumohr then restrained Ackley while I was hitting Ackley."), and the video confirms that plaintiff was in the process of doing so as defendant Mallery came on the scene, *see* Video, at 10:50:15.  A second later, defendant Mallery makes contact with plaintiff in what plaintiff accurately describes as a "football tackle."  *See* Video, at 10:50:16.  The two tumble over and off of Ackley and Rumohr, and Rumohr rolls back over to continue his restraint of Ackley.  *See* Video, at 10:50:17.  Defendant Mallery restrains plaintiff on the floor, and from this point on it does not appear that either plaintiff or Ackley offers any further resistance.  *See* Video, at 10:50:18-10:53:17.  Nor does plaintiff allege that defendant Mallery, or any other officer, used any excessive force against him after the tackle by defendant Mallery.

Under these facts, plaintiff cannot raise a genuine issue of material fact with respect to whether defendant Mallery used excessive force against him in violation of the Eighth Amendment.  As the video establishes the entire incident, beginning with the first punch and ending with the submission of both plaintiff and Ackley, lasted a total of 18 seconds.  Defendant Mallery's participation from his first appearance on the scene until he began his tackle of plaintiff lasted a mere 3 seconds.  It is undisputed that the information available to defendant Mallery at the time was that two prisoners were

involved in a fight, and he came to the scene to find another guard on the floor on top of one of the combatants, with the other combatant looming over the two preparing to deliver, and then delivering, some sort of blow.  The video suggests, and plaintiff has offered nothing to conclude otherwise, that defendant Mallery's actions were a good faith effort to restore order and protect a fellow guard from being assaulted.  The amount of force used was proportional to the threat posed; defendant Mallery did not strike plaintiff with any weapon, punch or kick him, or use any other force than the tackling maneuver which was necessary to remove plaintiff from his advantaged position over Rumohr and Ackley.  Further, force ceased the moment it was no longer needed; petitioner does not allege that defendant Mallery used any additional force after Mallery tackled him.[3]

As the Supreme Court explained in *Hudson*, the subjective inquiry "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm."  *Hudson*, 503 U.S. at 6.  "When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in the light most favorable to the claimant, 'will support a reliable inference of wantonness in the infliction of pain.'"  *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (quoting *Whitley*, 475 U.S. at 322); *see also*, *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992).  Courts are to keep in mind that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'"  *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320).  Further, the

---

[3]Plaintiff makes much of the fact that "[a]t no time did anyone tell plaintiff to break it up or say anything to let plaintiff know to stop."  Pl.'s Aff., ¶ 5.  Even assuming this is true (in the incident report Rumohr stated that he told plaintiff to cease several times), it does not alter the analysis.  Plaintiff should have known from the outset that his assaultive behavior was not proper, and RUO Rumohr's entering the fray and restraining Ackley should have made it clear that Rumohr wanted both prisoners to cease the fighting.

Supreme Court has admonished that courts should defer to prison officials as they attempt to maintain order and discipline within dangerous institutional settings. *See Whitley*, 475 U.S. at 321-22.

Here, the evidence provided by plaintiff's affidavit, when viewed together with the video, do not "support a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322). Rather, the evidence, even viewed in the light most favorable to plaintiff, shows that defendant Mallery had to make a split-second decision in how best to protect another inmate and a fellow guard from what he had every reason to believe was an ongoing assault by plaintiff, and he did not use any means inappropriate to the goal of ending the assault or use any additional force beyond that necessary to get plaintiff off of Ackley and Rumohr. This is precisely the type of good-faith, split-second decision making the Supreme Court has cautioned courts not to second guess. Under these facts, plaintiff has failed to establish a genuine issue of material fact sufficient that a rational jury could conclude that defendants actions were the result of a wanton infliction of pain, rather than a good faith attempt to subdue plaintiff. *See Stanley*, 134 F.3d at 635-36; *Ruffin v. Taylor*, 166 F. Supp. 2d 999, 1006-07 (D. Del. 2001). The video in this case, coupled with plaintiff's own description of the fray, shows that defendant Mallery acted in a good-faith attempt to restore order and not maliciously or sadistically, and "no reasonable jury could conclude otherwise." *Scott*, 550 U.S. at 386. Accordingly, the Court should grant defendants' motion for summary judgment.[4]

D.   *Conclusion*

In view of the foregoing, the Court should grant defendant Mallery's motion for summary judgment.

---

[4]This conclusion makes it unnecessary to consider defendant's alternative argument that he is entitled to qualified immunity. *See Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx. 826, 838 n.10 (6th Cir. 2009).

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: July 30, 2009

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on July 30, 2009.

s/Eddrey Butts
Case Manager

10