UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW EVANS,

               Plaintiff,

v.                                                                    Case No. 08-12725
                                                                      Honorable David M. Lawson
CHAD MALLORY,                                                         Magistrate Judge Paul J. Komives

               Defendant.

_____/

**ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, SUSTAINING PLAINTIFF'S OBJECTIONS IN PART,
DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, AND REFERRING CASE FOR FURTHER CONSIDERATION**

This matter is before the Court on a report filed by Magistrate Judge Paul J. Komives recommending that the defendant's motion for summary judgment be granted. The plaintiff, who is a prisoner in the custody of Michigan's Department of Corrections, filed a complaint alleging that the defendant, a prison guard, used excessive force when subduing the plaintiff during an altercation with another inmate. The magistrate judge considered the motion pursuant to an order referring all pretrial matters under 28 U.S.C. § 636(b)(1)(B) and recommended dismissal of the complaint. The plaintiff filed timely objections.

The heart of the defendant's motion is a compact computer disk (CD) that contains a silent still-frame videotape, which the defendant filed under seal. The defendant submitted a motion to file the CD under seal, which the magistrate judge granted, perhaps improvidently. However, the defendant apparently never made the CD available to the plaintiff. The plaintiff has objected to the magistrate judge's report because he has not seen the key evidence in the case and therefore has not been able to refute or comment on it. This objection is well taken. Allowing a party to litigate its case *ex parte*, as the defendant has done here so far, amounts to a fundamental denial of due process.

2:08-cv-12725-DML-PJK   Doc # 22   Filed 09/02/09   Pg 2 of 9   Pg ID 114

The magistrate judge's protective order allowing the sealing of the CD never authorized the defendant to submit the evidence to the Court *ex parte*. Because the defendant chose to proceed in that fashion, its presentation to the Court has been tainted, and the magistrate judge's recommendation based on the defendant's submission must be rejected.

The plaintiff is a state prisoner serving a sentence for armed robbery. He filed a *pro se* action under 42 U.S.C. § 1983 alleging that when he was housed at the Macomb Correctional Facility in New Haven, Michigan, defendant Chad Mallory, a corrections officer, used excessive force in restraining him during a fight, thereby violating the plaintiff's rights under the Eighth Amendment. The plaintiff received a laceration to his head that required three staples to close. The factual dispute in the case is over the manner in which the injury was inflicted.

The complaint alleges that the plaintiff was involved in a fist fight with prisoner Ackley inside the unit. Ackley was restrained by Resident Unit Officer (RUO) Rumohr, but the plaintiff says he was not told to stop fighting. Defendant Mallory came on the scene at this point and "ran full force and football tackled me causing my head to hit the floor splitting it open." Compl. ¶ 9. The plaintiff asserts that he was "in a daze and seeing in black and white" after the incident, experienced short-term memory loss, and continues to suffer from severe headaches. *See id*. ¶¶ 11-12. After the tackle, the plaintiff heard the defendant laugh and say to a co-worker, "Did you see the hit I put on him? Look at his head." *See id.* ¶ 13. As a result, the plaintiff claims that the defendant used excessive force maliciously and sadistically, without need or provocation, in violation of the Eighth Amendment. The plaintiff filed an affidavit in opposition to the summary judgment motion to verify his version of the events.

-2-

In contrast, an incident report filed by prison staff portrays the incident in the following way:

C/O Rumohr restrained prisoner Ackley and prisoner Evans began striking the back of C/O Rumohr's head. C/O Rumohr gave several direct orders to prisoner Evans to stop hitting him but the prisoner did not comply. RUO Chad Mallory arrived on the scene and restrained prisoner Evans. . . . During the fight with prisoner Ackley, prisoner Evans sustained a laceration to his head.

The plaintiff was convicted of a major misconduct following a hearing on the matter. In his affidavit, the defendant averred: "Upon arriving at the scene I observed Plaintiff Evans assaulting Officer Rumohr . . . . I then placed the Plaintiff on the floor and restrained him until he could be handcuffed and escorted out of the unit." Def.'s Br., Ex. A, Aff. of Chad Mallery, ¶ 3. He further asserted, "At no time were my actions malicious or sadistic in nature. I responded in a professional manner as trained by the Department of Corrections." Def.'s Br., Ex. A, Aff. of Chad Mallery, ¶ 4.

The third account of the events, of course, is contained in the silent still-frame videotape. The defendant maintains that the video supports his version of the events. Citing *Scott v. Harris*, 550 U.S. 372 (2007), the defendant contends that the CD dispels all dispute as to the events at hand and eviscerates any possible claim by the plaintiff that a factual dispute exists that warrants a trial.

Maybe it does. After all, in *Scott*, the Supreme Court opined that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007). Instead, the Court should "view[] the facts in the light depicted by the videotape." *Id.* at 381; *see also Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007). The Sixth Circuit has determined that the existence of a recording of the event makes "the underlying facts of the case . . . undisputed." *Dunn v. Matatall*, 549 F.3d 348, 350

(6th Cir. 2008). At the summary judgment stage of an excessive force claim, once the Court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supported by the record . . . the reasonableness of [the defendant's] actions . . . is a pure question of law." *Id.* at 353 (citing *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)) (emphasis omitted).

The forcefulness or certainty of one side's evidence, however, does not mean that the opponent must relinquish his right to see the evidence, comment on it, and attempt to refute it. Courts have long recognized the "dangers supposed to arise from the taking of ex parte evidence." *Patapsco Ins. Co. v. Southgate*, 30 U.S. 604, 616-17 (1831); *see also Chaplin v. Kirwin*, 1 U.S. 187, 1 Dall. 187 (1786). When a decision maker relies on *ex parte* evidence in reaching his conclusion, a violation of the other party's right to procedural due process occurs. *See, e.g., Tennessee Secondary School Athletic Ass'n v. Brentwood Academy*, 551 U.S. 291 (2007); *see also Kenny A. ex. rel. Winn v. Perdue*, 547 F.3d 1319, 1326-27 (11th Cir. 2008) (noting that "the district judge failed to comprehend the due process implications of what he was doing" when he reached a fee decision based on *ex parte* evidence). Reviewing courts have excused this breach of process on occasion by finding harmless error. *See Brentwood Academy*, 551 U.S. at 303-04 (determining that the due process violation was harmless because the evidence did not increase the penalties against the movant and the movant's argument that it would have employed a different litigation strategy was unsupported by the record); *Wright v. Southwest Bank*, 554 F.2d 661, 663-64 (5th Cir. 1977) (finding that the district court's acceptance of, and reliance on, *ex parte* evidence was reversible error where the opposing party had no opportunity to test its validity and similar evidence had not

been introduced, but was harmless error where similar evidence had been previously introduced into evidence).   But error, nonetheless, it is.

It is beyond debate that a party retains "the right to know what information is being submitted to the decisionmaker and the opportunity to challenge the reliability of the government's sources as well as provide contrary information." *United States v. Accetturo*, 783 F.2d 382, 390 (3d Cir. 1986).  An analogous issue was addressed recently by the Sixth Circuit in *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc), in the context of lost evidence.  In that case, a prisoner brought an Eighth Amendment excessive force claim.  During an internal investigation concerning the event, prison staff relied on a videotape of the event to conclude that the prisoner's rights had not been violated.  This tape subsequently was lost or destroyed by nonparties to the litigation.  At trial, the district court initially refused to give the plaintiff's requested jury instruction on the issue of spoilation and proceeded without the plaintiff having full access to the materials.  However, on en banc review, the Sixth Circuit determined that federal law, not state law, applied and permitted sanctions for spoiled evidence.  *See Adkins*, 554 F.3d at  653.  It remanded the case to the district court to determine "whether sanctions for spoilation are appropriate and whether Adkins is entitled to a new trial because the denial of any such sanctions affected his substantial rights."  *Ibid.*

There is no excuse for the defendant's failure to make its evidence available to the plaintiff in this case.  The CD certainly exists.  There is no suggestion that the means are unavailable to provide the plaintiff with a view of the evidence.

Nor is there good reason to seal the CD.  Under the Local Rules, a motion for a protective order must "state the reason that sealing each item is necessary; state the reason that a means other than sealing is not available or unsatisfactory to preserve the interest advanced by the movant in

-5-

support of the seal; and have a supporting brief." *See* E.D. Mich. LR 5.3(b)(2)(iii)-(v).  The only

reason offered for sealing the CD is the defendant's conclusory allegation that sealing is necessary

to "maintain the security of the prison facility."  Br. in Supp. of Def.'s Mot. for Protective Order to

Seal Documents [dkt #11] at 3.  A review of  the still clips in this case, however, reveals no cause

for a security concern.

Despite the magistrate judge's sealing order, the CD is a judicial record, since it has been

offered by the defendant as the centerpiece of its summary judgment motion.  "[T]he courts of this

country recognize a general right to inspect and copy public records and documents, including

judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)

(footnotes omitted); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir.

1983) ("The public has a strong interest in obtaining the information contained in the court record.");

*see also In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) (Moore, J., concurring in part and

dissenting in part) (declaring that "[s]ealing court records . . . is a drastic step, and only the most

compelling reasons should ever justify non-disclosure of judicial records.").  There is, therefore, a

"presumptive right" of open judicial records. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470,

474 (6th Cir. 1983).  However, "trial courts have always been afforded the power to seal their

records when interests of privacy outweigh the public's right to know." *Ibid.*  In exercising its

discretion to seal judicial records, the Court must balance the public's common law right of access

against the interests favoring nondisclosure. *See Nixon*, 435 U.S. at 599, 602 (stating that Court

must consider "relevant facts and circumstances of the particular case"); *Belo Broadcasting Corp.*

*v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981); *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel*

*Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (court has a duty to "balance the factors

favoring secrecy against the common law presumption of access"); *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) ("The historic presumption of access to judicial records must be considered in the balance of competing interests.").

"Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 476. Courts have been permitted to seal documents that could be "used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case," contain "reservoirs of libelous statements for press consumption," or contain "business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

When measured against this demanding standard, the request to seal the CD in this case is unjustified. Certainly every detail of prison life need not be on display for public consumption. But when there is a claim that prisoner abuse has occurred, there can be little justification for concealing key evidence that exposes the wrongdoer or vindicates the accused personnel. When that key evidence forms the basis for a dispositive decision in the case, then only a compelling public interest can justify sealing that evidence. That compelling interest is absent here, but even if it existed, it would not warrant withholding the evidence from a party to the dispute.

It appears from the record in this case that the magistrate judge was not aware that the defendant presented the CD exhibit to him *ex parte*. Without the benefit of the plaintiff's later objection, one normally would not have been alerted to defense counsel's certificate on the summary

-7-

judgment motion stating that all exhibits were filed with the court, but only the "papers" were mailed to the plaintiff. Br. in Supp. of Mot. for Summ. J. [dkt #10] at 7. However, the magistrate judge's lack of awareness does not vitiate the procedural due process error. Because the CD was not made available to the plaintiff, its use in adjudicating the summary judgment motion cannot be excused. Therefore, the Court will reject the recommendation to grant the defendant's motion for summary judgment. In the absence of the CD, a fact question exists whether the defendant used excessive force against the plaintiff. The case will be referred to the magistrate judge for further proceedings, which may include consideration of a new motion for summary judgment that relies on the CD, but only if it is made available for meaningful viewing by the plaintiff.

Accordingly, it is **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation [dkt #21] are **SUSTAINED IN PART**.

It is further **ORDERED** that the report and recommendation [dkt #20] is **REJECTED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt #10] is **DENIED**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Paul J. Komives under the previous reference order [dkt #3] to ready the matter for trial and to conduct a trial if the parties consent under 28 U.S.C. § 636(c)(1).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 2, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 2, 2009.

s/Lisa M. Ware
LISA M. WARE