UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW EVANS,

        Plaintiff,

v.                                Case No. 08-12725
                                Honorable David M. Lawson
CHAD MALLORY,            Magistrate Judge Paul J. Komives

        Defendant.
_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS,
GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, AND DISMISSING COMPLAINT**

This matter is before the Court on a report filed by Magistrate Judge Paul J. Komives recommending that the defendant's second motion for summary judgment be granted. The plaintiff, who is a prisoner in the custody of Michigan's Department of Corrections, filed a complaint alleging that the defendant, a prison guard, used excessive force when subduing the plaintiff during an altercation with another inmate. The Court referred all pretrial matters to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). The defendant filed a motion for summary judgment, together with a compact disk (CD) that contained a video recording of the incident. However, that exhibit was filed under seal and not furnished to the plaintiff. The magistrate judge recommend that the summary judgment motion be granted, but the Court rejected that recommendation because of the procedural violation. The defendant filed a second motion for summary judgment after the plaintiff was provided access to the CD. The magistrate judge once again recommended that the motion be granted and the complaint dismissed. The plaintiff filed timely objections and the matter is now before this Court for *de novo* review. This time, the Court agrees with the magistrate judge that the

plaintiff has not offered sufficient evidence to create a fact question on the issue of excessive force.

Therefore, the motion for summary judgment will be granted.

I.

The basic facts of the case, as summarized in the Court's earlier opinion, remain the same:

> The plaintiff is a state prisoner serving a sentence for armed robbery. He filed a *pro se* action under 42 U.S.C. § 1983 alleging that when he was housed at the Macomb Correctional Facility in New Haven, Michigan, defendant Chad Mallory, a corrections officer, used excessive force in restraining him during a fight, thereby violating the plaintiff's rights under the Eighth Amendment. The plaintiff received a laceration to his head that required three staples to close. The factual dispute in the case is over the manner in which the injury was inflicted.
> The complaint alleges that the plaintiff was involved in a fist fight with prisoner Ackley inside the unit. Ackley was restrained by Resident Unit Officer (RUO) Rumohr, but the plaintiff says he was not told to stop fighting. Defendant Mallory came on the scene at this point and "ran full force and football tackled me causing my head to hit the floor splitting it open." Compl. ¶ 9. The plaintiff asserts that he was "in a daze and seeing in black and white" after the incident, experienced short-term memory loss, and continues to suffer from severe headaches. *See id*. ¶¶ 11-12. After the tackle, the plaintiff heard the defendant laugh and say to a co-worker, "Did you see the hit I put on him? Look at his head." *See id.* ¶ 13. As a result, the plaintiff claims that the defendant used excessive force maliciously and sadistically, without need or provocation, in violation of the Eighth Amendment. The plaintiff filed an affidavit in opposition to the summary judgment motion to verify his version of the events.
> In contrast, an incident report filed by prison staff portrays the incident in the following way:
>> C/O Rumohr restrained prisoner Ackley and prisoner Evans began striking the back of C/O Rumohr's head. C/O Rumohr gave several direct orders to prisoner Evans to stop hitting him but the prisoner did not comply. RUO Chad Mallory arrived on the scene and restrained prisoner Evans. . . . During the fight with prisoner Ackley, prisoner Evans sustained a laceration to his head.
>
> The plaintiff was convicted of a major misconduct following a hearing on the matter. In his affidavit, the defendant averred: "Upon arriving at the scene I observed Plaintiff Evans assaulting Officer Rumohr . . . . I then placed the Plaintiff on the floor and restrained him until he could be handcuffed and escorted out of the unit." Def.'s Br., Ex. A, Aff. of Chad Mallery [this apparently reflects the correct spelling of the defendant's name, despite what appears on the docket], ¶ 3. He further asserted, "At no time were my actions malicious or sadistic in nature. I responded

>  in a professional manner as trained by the Department of Corrections." Def.'s Br., Ex. A, Aff. of Chad Mallery, ¶ 4.

*Evans v. Mallory*, No. 08-12725, 2009 WL 2900718, at *1-2 (E.D. Mich. Sept. 2, 2009).

The silent still-frame videotape provides another version of the events. The CD containing the recording is an important piece of evidence; sometimes video evidence can settle fact disputes created by conflicting witness accounts so that summary judgment is appropriate. *See Scott v. Harris*, 550 U.S. 372 (2007). The video shows the plaintiff and Ackley conversing in the hall of the unit. The plaintiff moves toward Ackley and begins hitting him; the two fight for nearly 15 seconds while other prisoners look on. RUO Rumohr runs onto the scene and into the fight. His specific actions are blocked from view by bystanders. Next, the plaintiff raises up and looks to be standing hunched over Ackley and Rumohr. The rest of his actions are obscured. Officer Mallery runs onto the scene and tackles the plaintiff. The specific details of the tackle and the plaintiff's landing position are blocked. The next visible scene shows the two prisoners restrained on the ground by the two guards. The plaintiff is escorted from the scene several moments later, and Ackley is removed some time after that.

In his first motion, the defendant argued that there was no genuine issue of material fact about whether his use of force was appropriate and also that he was entitled to qualified immunity. After the motion was denied, the plaintiff was given an opportunity to view the video on September 23, 2009 at 4:00 p.m. He viewed the video in its entirely twice and requested replays of small segments, pauses to view still shots, and magnification of certain frames, all of which he was given at the time of the viewing. The prison offered him the opportunity to take notes during the video, but the plaintiff declined to do so.

The defendant filed his second motion for summary judgment on August 24, 2010. The plaintiff responded with a "Motion in Opposition for Summary Judgment" on September 24, 2010. The magistrate judge issued a report recommending that this Court grant the defendant's motion for summary judgment on November 15, 2010.

The magistrate judge concluded that "[h]aving considered the matter anew in light of plaintiff's post-viewing response to defendant's second motion for summary judgment, I see no basis on which to alter my prior recommendation that defendant is entitled to summary judgment" and "the Court should conclude that no genuine issues of material fact exist as to the subjective component of plaintiff's Eighth Amendment claim, and that defendant is entitled to judgment as a matter of law." Rep. & Rec. at 6-7. The magistrate judge concluded that the plaintiff's description of the contact as a "football tackle" was accurate and also was not contested in the record. *Id.* at 8-9.

Nonetheless, the magistrate judge emphasized that "the information available to defendant Mallery at the time was that two prisoners were involved in a fight, and he came to the scene to find another guard on the floor on top of one of the combatants, with the other combatant looming over the two preparing to deliver, and then delivering, some sort of blow." *Id.* at 9. The evidence suggested that the defendant's actions "were a good faith effort to restore order and protect a fellow guard from being assaulted." *Ibid.* The magistrate judge also concluded that the force used was proportional to the threat and it ceased when the threat was over. Supreme Court precedent cautioned against second-guessing corrections officials who must make split-second decisions in a fast-paced and pressure-filled environment. *Id.* at 10 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-22 (1986)). "[T]he evidence, even when viewed in the light most favorable to plaintiff, shows that defendant Mallery had to make a split-second decision

in how best to protect another inmate and a fellow guard from what he had every reason to believe was an ongoing assault by plaintiff, and he did not use any means inappropriate to the goal of ending the assault of use any additional force beyond that necessary to get the plaintiff off of Ackley and Rumohr. This is precisely the type of good-faith, split-second decision making the Supreme Court has cautioned courts not to second guess." *Id.* at 10-11. Therefore, the magistrate judge recommended granting the defendant's second motion for summary judgment.

In his objections, the plaintiff argued that he had presented a genuine issue of fact sufficient to support a jury verdict in his favor on the issue of excessive force with the following evidence: "The facts establish that the initial RUO on the [scene] of the fight, RUO Rumohr, . . . was able to single-handidly, split up, Plaintiff Evans and Prisoner Ackley without the usage of such force that caused any injury. In other words, Defendant Mallory 'football' tackle[] was excessive and unnecessary. Officer Rumohr never used this level of force to separate Plaintiff Evans from Prisoner Ackley." Pl.'s Objs. at 1-2.

II.

Objections to a Report and Recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The parties' failure to file objections to the Report and Recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the Magistrate Judge's report releases the Court from its duty to independently review the motion. *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

A *pro se* litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a *pro se* litigant is subject to the same rules of procedure and evidence as litigants who are represented by counsel. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). An issue is "genuine" if a "reasonable jury could return a verdict for the non-moving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287

F.3d 527, 534 (6th Cir. 2002). Therefore, a factual dispute that "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247-48); *see also Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

In a defense motion for summary judgment, the plaintiff must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350

F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Ibid.* (quoting *Anderson*, 477 U.S. at 251-52) (internal quotation marks omitted).

As noted earlier, a video recording of the incident is important evidence that sometimes can be dispositive of a fact dispute. The Supreme Court explained in *Scott v. Harris* that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007). Instead, the Court should "view[] the facts in the light depicted by the videotape." *Id.* at 381; *see also Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007). In some cases, the Sixth Circuit has determined that the existence of a recording of the event makes "the underlying facts of the case . . . undisputed." *Dunn v. Matatall*, 549 F.3d 348, 350 (6th Cir. 2008). At the summary judgment stage of an excessive force claim, once the Court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supported by the record . . . the reasonableness of [the defendant's] actions . . . is a pure question of law." *Id.* at 353 (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis omitted).

The plaintiff's complaint alleges claim a under 42 U.S.C. § 1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir.

2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). The parties do not dispute that the defendant was acting under color of law. Nor do they contest that the Eighth Amendment bars the use of excessive force against incarcerated persons. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995).

To determine whether the force used is excessive, the Court must examine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Ibid.*; *see Hudson*, 503 U.S. at 7; *see also Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008). The nature of the prison setting requires contact between corrections officials and prisoners that might be considered actionable at common law. However, such contact violates the Eighth Amendment only if it constitutes the "unnecessary and wanton infliction of pain." *Pelfrey*, 43 F.3d at 1037.

The Supreme Court has identified the factors courts consider when evaluating the propriety of the force used. They include "the need for application of force, the relationship between the need and the force that was used, . . . the extent of the injury inflicted," "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. *Whitley* also suggests that "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness . . . as is tantamount to a knowing willingness that it occur." *Id.* at 321.

The surrounding context in which the force is used also is an important consideration. The judicial inquiry "must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected

-9-

to unreasonable *post hoc* judicial second-guessing." *Parrish v. Johnson*, 800 F.2d 600, 605 (6th Cir. 1986); *see also Williams v. Browman*, 981 F.2d 901, 906 (6th Cir. 1992) ("[A]ll the facts and circumstances surrounding the application of force must be scrutinized and weighed." (emphasis omitted)). During a disturbance in the prison, officials generally are permitted to use more force than normally would be necessary to control the prisoner. *See Moore v. Holbrook*, 2 F.3d 697, 700-01 (6th Cir. 1993). However, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates suffer if guards use force." *Hudson*, 503 U.S. at 6.

The Court also may consider the extent of the plaintiff's injury in determining whether the force was plausibly necessary. *See Hudson*, 503 U.S. at 7. Although a *de minimis* use of force will not support an actionable claim, *Moore*, 2 F.3d at 701, a plaintiff may recover even if he suffers only minor injury. *Hudson*, 503 U.S. at 10. In *Hudson*, the Supreme Court determined that "bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes." *Id.* at 10. In contrast, where a plaintiff suffered only "minor lacerations and cuts," but no dislocation or fracture of his hand, the Court determined that officials had not used excessive force in light of both the circumstances and the extent of the plaintiff's injuries. *See Lockett*, 526 F.3d at 876.

The evidence in this case would not permit a jury to conclude that the defendant used excessive force when he came to the aid of a follow corrections officer to break up a fight between inmates. Taken in the light most favorable to the plaintiff, the evidence, including the video recording, shows that the plaintiff was involved in a fist fight with another prisoner inside the unit. Other prisoners were in the area but none became involved, nor did they appear ready to step into

-10-

the fight. Officer Rumohr entered the fight and restrained Ackley. He did not tell the plaintiff to disengage, and the video does not establish conclusively whether the plaintiff continued to punch the men or whether his movements show an intent to stand up and walk away. While the plaintiff was still bent over Rumohr and the other inmate, who both were lying on the ground, the defendant ran into the scene and "football tackled" the plaintiff, bringing him to the floor and causing the injury to the plaintiff's head.

These facts do not permit a finding of excessive force under current case law. The plaintiff's involvement in a fight immediately before the defendant tackled him allows the officer to use more force than would otherwise be authorized against the plaintiff. *See Moore*, 2 F.3d at 700-01. When the defendant entered the scene, the three men were still entangled and potentially still fighting in the middle of the floor. When confronted with the quickly changing and potentially volatile situation in the prison housing unit, the defendant's actions cannot be found to constitute anything other than a good faith effort to stop the fight and restore order. *See Hudson*, 503 U.S. at 7; *Pelfrey*, 43 F.3d at 1037. The defendant may have overreacted to the circumstance he confronted, and the surge of adrenaline may have amplified the force of his tackle, but there is no evidence that his actions constituted the "unnecessary and wanton infliction of pain." *Pelfrey*, 43 F.3d at 1037. After the tackle, the defendant did not engage in other acts of gratuitous violence; he merely held the plaintiff in a restraint until other guards could escort them from the scene. There was no evidence of — and the plaintiff has not alleged — additional punching, choking, or other forms of assault. Once the prison emergency had dissipated, the plaintiff was released from his restraint.

The plaintiff's injury, a head would that required three staples to close, does not support his assertion that excessive force was used against him. The plaintiff's injury was relatively minor; it

was only skin-deep and did not involve a fracture to his skull. *See Lockett*, 526 F.3d at 876. Moreover, the extent of the injury alone cannot support an excessive force claim, since this claim is considered from the perspective of a reasonable officer, rather than in hindsight. The fact that the plaintiff may continue to suffer from lingering effects probably cannot be used to support excessive force, since this information would not be known to a reasonable officer at the time of the incident.

The plaintiff's argument that RUO Rumohr required less force to break up the dispute than did the defendant makes the valid point that perhaps the defendant did not need to use the amount of force he employed to break up the fight. Even if that is true, there still is no evidence of the defendant's subjective intent to do harm or inflict punishment on the plaintiff. The situation was evolving rapidly between the time RUO Rumohr entered the melee and the time the defendant arrived on the scene. Rumohr was on the ground with an inmate and the plaintiff was not secured. As the magistrate judge observed, the situation fit neatly within those situations requiring deference to the corrections officials, as the Supreme Court has described. *See, e.g.*, *Hudson*, 503 U.S. at 6; *Whitley*, 475 U.S. at 320-22.

### III.

The Court finds that the magistrate judge correctly applied the governing law to the facts as presented by the record. The plaintiff's objections to the report and recommendation lack merit and must be overruled.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #28] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation [dkt #29] are **OVERRULED**.

It is further **ORDERED** that the defendant's second motion for summary judgment [dkt #24] is **GRANTED**, the plaintiff's motion in opposition to summary judgment [dkt #27] is **DENIED**, and the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 30, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---